# Supreme Court of the Navajo Nation

**The Navajo Nation,**
**Navajo Agricultural Products Industry, et al.,**
**Defendants-Appellants,**
**v.**
**Elvira Crockett, Lalora Charles Roy,**
**and Charmaine Tso,**
**Plaintiffs-Appellees.**
**Decided November 26, 1996**

## OPINION

Before YAZZIE, Chief Justice, CADMAN and *MORRIS (*sitting by designation), Associate Justices.

James Jay Mason, Esq., Gallup, New Mexico, for the Appellants; and Earl Mettler, Esq., Albuquerque, New Mexico, for the Appellees.

Opinion delivered by CADMAN, Associate Justice.

This is an appeal of a jury verdict in favor of Navajo Nation entity employees and an order denying the Navajo Nation's motion for directed verdict.

## I. Facts

Elvira Crockett, Lalora Charles Roy, and Charmaine Tso ("employees"), were employed by Navajo Agricultural Products Industry ("NAPI"), a Navajo Nation farming enterprise. The Economic Development Committee ("EDC") of the Navajo Nation Council is the oversight committee for NAPI. The NAPI Board of Directors reports management activity to the EDC. On November 17, 1992, the EDC held a meeting concerning NAPI. NAPI management was not informed of the meeting; however, the plaintiff employees attended.

The employees told of possible NAPI mismanagement and misconduct at the meeting. They also presented business documents to the EDC that were taken without NAPI management authorization. The EDC directed NAPI not to take retaliatory action against the employees for these actions.

Nevertheless, the employees were implicated, placed on indefinite administrative leave, and then terminated on December 23, 1992. After an unfavorable determination under NAPI's grievance procedures, the employees filed an origi-

nal action in the Window Rock District Court claiming that NAPI violated their rights to due process of law and freedom of speech. They asked the court to reinstate them in their positions and award them damages. At trial, NAPI moved for a directed verdict which the district court denied. The jury returned a general verdict in favor of the employees, awarding them monetary damages. NAPI appealed the denial of its motion for directed verdict and the jury verdict on May 4, 1994. The employees cross-appealed on May 17, 1994.

The issues on appeal are the following:

1. Whether NAPI, an enterprise of the Navajo Nation, is immune from suit.

2. Whether NAPI can raise qualified immunity as a defense for the first time on appeal.

3. Whether the district court correctly denied NAPI's motion for directed verdict on the employees' freedom of speech and due process claims.

4. Whether evidence surrounding a 1991 meeting between NAPI, the EDC, and Navajo Nation President Peterson Zah was admissible.

5. Whether the employees proved damages by "clear and convincing" evidence and whether they are entitled to damages for emotional distress.

## II. Immunity From Suit

### A. The Insurance Exception

Enterprises of the Navajo Nation, including NAPI, are immune from suit in the absence of an express waiver by the Navajo Nation. 1 N.N.C. §§ 352-353 (1988); 7 N.N.C. § 257 (1985). The Nation's immunity from suit is jurisdictional and can be raised for the first time on appeal, as NAPI does in this case. *Navajo Housing Authority v. Dana*, 5 Nav. R. 157, 160 (1987).

The Navajo Nation Sovereignty Act ("Act"), 1 N.N.C. §§ 351-355, provides four exceptions to the Nation's immunity from suit. In this case, we are concerned only with the insurance exception, which is as follows:

> The Navajo Nation may be sued only in the Courts of the Navajo Nation with respect to any claim which is within the express coverage and not excluded by either commercial liability insurance carried by the Navajo Nation or an established Navajo Nation self-insured and/or other claims program of the Navajo Nation government, approved and adopted pursuant to the laws of the Navajo Nation....

1 N.N.C. § 354(f) (Supp. 1984-85). The other subsection applicable to this issue requires the Nation to carry liability insurance to cover "wrongful deprivation or impairment of civil rights as set forth in ... the Bill of Rights of the Navajo Nation." 1 N.N.C. § 354(f)(5).[1] This subsection requires the Nation to carry liability insurance to cover civil rights claims and any damages arising therefrom.

---

1. This provision is marked as section 354(e) (5) in Navajo Tribal Council Resolution No. CD-60-86 (passed December 11, 1986), but would be marked as section 354(f) (5) in the Code, if the same format is used in the 1995 edition.

*Raymond v. Navajo Agricultural Products Industry*, 7 Nav. R. 142, 144-45 (1995). It also modifies and limits the requirement in section 354(f) that the Nation may only be sued for claims expressly covered by its policy.

The employees' claims are framed as civil rights claims, notably for violations of freedom of speech and due process of law. NAPI admits that its insurance covers civil rights claims, but argues that the employees' claims arise from employment termination and not civil rights, and therefore are expressly excluded under its policy. NAPI's policy does exclude "any liability arising out of any ... [e]mployment related or personnel practices, policies, acts, errors or omissions including ... [t] termination of employment ... [and] compensation...." Fireman's Fund Policy, Section I.C.2.c.(2), (3).

Where the Nation's insurance excludes coverage for employment-related claims, a disgruntled employee cannot overcome the Nation's immunity from suit. *Raymond, id.* at 144-45. In *Raymond*, we agreed with the district court that the plaintiff's claims were "employment-related," and not civil rights claims, although she raised civil rights claims for the first time on appeal. *Id.* at 145. In contrast, the employees in this case properly raised civil rights claims in their complaint and the district court decided they were civil rights claims. The district court has the duty to make that determination. *Raymond, id.* Accordingly, this case is a civil rights case, and not an employment case.

As stated above, the Act expressly mandates that the Nation's insurance policy include protection against civil rights violations. 1 N.N.C. § 354(f)(5) (1988).[2] NAPI's insurance policy provides coverage for federal or state civil rights violations at Sections V.P and V.S, which state as follows:

> *Public Officials' Errors and Omissions* means any and all *Wrongful Acts* by an *Insured* in the discharge of duties for the *Named Insured* ... *Wrongful Act* includes actual or alleged violations of antitrust statutes, negligent ministerial acts, and violations of federal or state civil rights providing coverage is otherwise afforded under this policy. (emphasis in original).

Although this provision only refers to federal or state civil rights violations, we find it is boilerplate language and interpret it to include violations of Navajo Nation law. The intent is to redress civil rights violations. NAPI's policy does not exclude civil rights claims and by law they cannot be excluded. The Navajo Nation civil rights laws would be rendered meaningless if civil rights claims were excluded in a policy. Thus, the Nation's immunity from suit is waived under the Act's insurance exception.

---

2. The Navajo Nation Attorney General noted in a legal opinion that Section 354(f) (5) requires inclusion of commercial insurance coverage for civil rights violations, and that if such insurance coverage is not available, "then the amendment required coverage within the tribe's self-insurance liability retention." Op. Att'y Gen. 5 (Oct. 30, 1986). The Attorney General went so far as to identify an "insurance coverage exception." *Id.*

## B. Qualified Immunity

NAPI argues that in the absence of a showing of bad faith and gross negligence, an official who violates a person's rights guaranteed by the Navajo Nation Bill of Rights is entitled to qualified immunity. See 1 N.N.C. § 354(f)(4)(B) (Supp. 1984-85). Individual Navajo Nation officials are entitled to qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 813, 818 (1982). For our purposes, constitutional rights are those enumerated in our Bill of Rights.

Qualified immunity is an affirmative defense which must be explicitly pleaded in the answer to provide notice to all parties. NAPI waived this argument because it failed to do so. Simply citing the entire Navajo Nation Sovereign Immunity Act as an affirmative defense, as NAPI has done in this case, is insufficient.[3] The Act has many defenses and the plaintiff cannot be expected to guess at which defense the defendant is relying on if the entire Act is cited.

# III. Directed Verdict

## A. Free Speech

NAPI argues that the district court erred in denying its motion for a directed verdict on the issue of free speech. Navajo common law is the law of preference in the courts of the Navajo Nation. *Navajo Nation v. Platero*, 6 Nav. R. 422, 424 (1991). This Court applies Navajo common law to determine whether an individual's right to free speech has been violated. It provides that an individual has a fundamental right to express his or her mind by way of the spoken word and/or actions. As a matter of Navajo tradition and custom, people speak with caution and respect, choosing their words carefully to avoid harm to others. This is nothing more than freedom with responsibility, a fundamental Navajo traditional principle.

The speech in this case involved 1) attending and speaking at the EDC meeting; 2) copying confidential documents; and 3) bringing the documents to the meeting. The parties debate whether the employees were fired for copying and removing the documents, a NAPI policy violation, or for attending and speaking at the meeting. The district court's determination of protected speech focused on the statements made and documents presented at the meeting. Thus, for purposes of review by this Court, the speech in question is statements made and documents presented by the employees at the EDC meeting.

Similar to the American system, however, there are Navajo traditional limitations on the content of speech. For example, on some occasions, a person is pro-

---

3. NAPI's defense is as follows: "The Navajo Nation is immune from suit in this action pursuant to Title 1, §§ 351 through 355, and related provisions of the Navajo Tribal Code (Sovereign Immunity Act)."

hibited from making certain statements, and some statements of reciting oral traditions are prohibited during specific times of the year.

Furthermore, speech should be delivered with respect and honesty. This requirement arises from the concept of *ke'*, which is the "glue" that creates and binds relationships between people. To avoid disruptions of relationships, Navajo common law mandates that controversies and arguments be resolved by "talking things out." This process of "talking things out," called *hoozhoojigo*, allows each member of the group to cooperate and talk about how to resolve a problem. This requirement places another limitation on speech, which is that a disgruntled person must speak directly with the person's relative about his or her concerns before seeking other avenues of redress with strangers.

In the employment context, relationships are established according to the personnel policies, and other instruments. When an employee has a complaint about a supervisor, according to Navajo custom and tradition, he or she should first approach the supervisor and discuss the problem in a respectful manner. Moreover, under the Navajo common law concept of *nalyeeh*, the employee should not seek to correct the person by summoning the coercive powers of a powerful person or entity, but should seek to correct the wrongful action by "talking things out." The employee should not seek a remedy from a stranger, but should rather explain the problem to the person or one of his or her relatives and ask that "things be put right." If this method proves unsuccessful, then the employee also has access to an internal employment grievance process. Even in this formal, modern process for addressing grievances, the traditional rules of respect, honesty, and kinship apply.

In situations where the complaint alleges employer mismanagement, distinct from internal personnel matters, an employee is entitled to consult others vested with the authority to hear such complaints, such as the organization's own committee, or an oversight of the Navajo Nation Council. An oversight committee is limited by 2 N.N.C. § 191, "to legislation and policy decisions and shall not involve program administration...." This removes most personnel complaints from the committees, and limits their review of director conduct to overall competence in management.

When discussing management concerns with the appropriate oversight committee, an employee must follow certain limitations. The employee must be respectful in his or her approach, and an initial inquiry with management to "talk things out" is encouraged. Second, the speech must involve matters of public concern and fall within the oversight authority of the committee. When an employee gives a statement before an official government committee, he or she speaks in a context that is inherently public in nature. This also includes any documents which the employee may distribute. Documents must be of a public nature and if they are confidential or restricted, then proper authorization for their distribution must be obtained.

An oversight committee often has to rely on information from sources other

than those in positions of authority to ascertain the full picture. However, an employee is prohibited from raising internal personnel matters or other personal problems before a committee. The court should also consider whether the business is a government enterprise or private entity.

An employee must comply with these limitations when alleging that he or she was terminated or otherwise mistreated as a result of his or her speech. The employee must also show some nexus between the termination or other adverse employment action and the speech. One method for proving this element is in terms of time — whether the adverse employment action occurred shortly after the occurrence of the speech. That is, the employee must show his or her speech was a significant factor or motivation in the adverse employment action.

This Court finds the speech in question was "a matter of public concern." At the meeting, the employees expressed safety and environmental concerns, undue interference by the Bureau of Indian Affairs in P.L. 93-638 contracts, and allegations of misconduct and misfeasance on the part of NAPI management. The disclosure of misconduct or misfeasance by a government entity is a matter of public concern, as are questions of effectiveness and composition of the NAPI management board. Likewise, safety and environmental concerns have the potential to directly impact the general public, and therefore, are a matter of public interest. Members of the EDC had previously visited NAPI and invited the employees to contact them about their concerns with management, in particular Appellee Crockett. The chairman of the EDC also advised Crockett to bring supporting documentation to the meeting.

Moreover, the employees were speaking before an official body of the Navajo Nation Council. When an employee gives a statement before an official government committee, he or she speaks in a context that is inherently public in nature.

The second point of inquiry is whether NAPI's interest in promoting the efficiency of the public services it performs through its employees outweighs the employees' right to free speech. Indeed, NAPI has an interest in ensuring compliance with office policies and to maintain order and control over its employees. The jury concluded, however, that the employees were not terminated for violations of NAPI policy, and NAPI does not contest this finding on appeal. Furthermore, the employees' attendance at the meeting did not result in any significant harm to NAPI. The documents distributed at the meeting were never made public or put in the "wrong hands," nor was there evidence of disruption or disharmony in the office as a result. NAPI's interest to not disclose demoralizing or disruptive information is not an adequate interest to outweigh an individual's right to free speech.

Based on the foregoing, this Court finds that the district court did not err in its decision that the speech was a matter of public concern. The decision of the district court that the employees' speech was protected is affirmed.

## B. Due Process

NAPI also filed a motion for directed verdict on the issue of due process, which the district court denied. Clearly, as in the case of free speech, there were outstanding questions of fact regarding the due process issue, which the court properly submitted to the jury. Specifically, the question of whether the grievance hearings were fair is a question of fact for the jury. Evidence was presented by the employees which showed potential violations of due process, making it impossible for the judge to rule in favor of NAPI as a matter of law. The evidence shows that 1) Roy was not permitted to call a witness at a grievance hearing, 2) Step I and Step II of the employees' grievances were heard by the immediate supervisor who fired them, 3) A tie-vote in Roy's case at Step III was construed as an affirmation of Step II's decision, and Tso never received a decision at Step III after a panel member disqualified herself, and 4) The panel at Step IV again reached a tie-vote, effectively denying the employees an opportunity to have their discharges reviewed.

Moreover, the question of whether the employees were terminated for good cause was also unresolved at the time of the motion. NAPI argued that they were fired for policy violations, but employees argued they were fired in retaliation for the criticisms they made at the EDC meeting. The determination of NAPI's reasons for firing the employees is a question of fact for the jury. Consequently, the district court did not err in denying the motion for directed verdict on the issue of due process.

# IV. Admissibility of 1991 Meeting

NAPI argues that the district court erred in admitting prejudicial testimony regarding a 1991 meeting. In 1991, a group of NAPI employees, along with their supervisor, Ferdinand Notah, met with the EDC and President Peterson Zah to air their grievances and distribute documents. The employees testified about the 1991 meeting to show that the sharing of documents with an oversight entity had not harmed NAPI in the past.

The decision to overrule an objection and admit the disputed evidence is discretionary. The district court, in this case, determined that such evidence was relevant and, therefore, admissible. The district court also gave a limiting instruction to decrease its prejudicial effect and increase its probative value. This Court finds no abuse of discretion on the part of the district court. The decision to admit the evidence is therefore affirmed.

# V. Damages

NAPI argues that the employees are not entitled to monetary damages because their loss was not a "personal injury" or "property damages," and that they failed to prove damages by "clear and convincing evidence" which were the "direct and

proximate result" of wrongful deprivation or the impairment of civil rights, as required by 1 N.N.C. § 354(f)(5). NAPI also dismisses the employees' claims for lost wages since they are excluded from the Nation's insurance policy under the employment-related claims exclusion.

NAPI, however, failed to preserve three of these issues for appeal. Evidentiary requirements of the Act, such as 1 N.N.C. § 354(f)(5), may not be raised for the first time on appeal. This Court will only consider questions which were raised and reserved in the district court. 7 N.N.C. § 803 (Supp. 1984-85). Furthermore, Nav.R.Civ.P. 48(a) provides that "[n]o party may assign as error the giving or the failure to give an instruction, unless objection is made before the jury retires to consider its verdict, stating distinctly the instruction objected to or improperly omitted and the grounds of his objection." A careful review of the trial court record reveals that NAPI never raised the "direct and proximate" element or the "personal injury or property damage" issue below, nor did NAPI object to the jury instruction as given, which included lost wages as part of the damages calculation. Thus, NAPI is barred from raising these issues on appeal for the first time.

With regards to the "clear and convincing" standard, NAPI properly preserved this issue for appeal by submitting to the jury that the damages were not adequately proven and by including in the jury instructions the "clear and convincing" standard. The Act mandates this higher evidentiary standard in the limited case of civil rights violations. 1 N.N.C. § 354(f)(5).

Consequently, this Court is faced with the sole issue of whether employees proved damages by "clear and convincing evidence." Under Navajo Nation law, this Court will not reverse a jury's determination of damages unless it finds that the award is unsupported by the evidence. *Chavez v. Tome*, 5 Nav. R. 183 (1987). To meet this standard, the plaintiffs must establish damages with "reasonable certainty" and with the "best available evidence." *Wilson v. Begay*, 5 Nav. R. 1, 5 (1988). Moreover, Navajo Nation law requires that the record contain a "reasonable justification" for the amount of damages awarded which includes a calculation of damages. *Id.* If the only available evidence is testimonial, then witness testimony is adequate to satisfy the evidentiary standard and the defendant has the burden of disproving such testimony. *Id.*

In this case, the employees presented "Exhibit 18" at trial which listed their monetary damages, covering lost earnings, medical treatment, and any other actual monetary loss, as stated in the jury instructions. The amounts listed in Exhibit 18 were presumably derived from receipts, but these receipts were never produced or introduced into evidence. NAPI did not object to the submission of Exhibit 18 into evidence, but this omission does not release the employees from their burden to prove damages by clear and convincing evidence. NAPI's belief that Exhibit 18 was insufficient is distinct from a belief that it is inadmissible.

Clearly, in this instance, the "best available evidence" are the receipts that employees claimed they used to create their general summary in Exhibit 18.

Employees' testimony as to the Exhibit 18's validity is inadequate to satisfy the "clear and convincing" standard, because their testimony was not the only evidence available. Other available evidence consisted of receipts and personal records which were not directly admitted into evidence. For these reasons, the employees failed to meet their burden of proof.

Another component of the jury instructions for damages was pain and suffering. On cross-appeal, the employees argue that the damages awarded failed to include this element of damages. Appellants argue that the Sovereign Immunity Act does not provide for emotional distress, and in the alternative, that the damages for emotional distress were not proven by clear and convincing evidence.

The Act does not explicitly preclude or provide for emotional distress. The subsection in question, 1 N.N.C. § 354(f)(5), states:

> [T]he sums [for] which the Navajo Nation as insured shall become legally obligated to pay as damage because of personal injury and/or property damage, shall include liability for actual monetary loss and damage....

Pursuant to this subsection, a plaintiff may recover all kinds of damages, as long as they result from personal injury or property damages. Personal injury includes lost wages, medical expenses, and pain and suffering. 2 Dan B. Dobbs, *Law of Remedies: Damages-Equity-Restitution* § 8.1(1) (2d ed. 1993). As such, this Court concludes that 1 N.N.C. § 354(f)(5) includes damages for emotional distress arising from civil rights violations.

In this case, the jury awarded damages slightly in excess of Exhibit 18, meaning that the excess amount could be attributed to pain and suffering. The excess amounts were $208 for Roy, $123 for Tso, and $548 for Crockett. Contrary to the employees' assertion, such amounts are not nominal. However, these excess amounts are suspect because they are dependent upon the amounts awarded for monetary damages, which were not proven by "clear and convincing" evidence. Where the appropriate amount of damages cannot be properly determined on appeal, a remand is required. *Wilson*, 6 Nav. R. at 7. Therefore, the jury's determination of monetary damages and emotional distress are reversed and the issue remanded for further proceedings to determine the appropriate amount of damages.

## VI. Conclusions

Accordingly, this Court affirms the verdict in favor of the employees and remands the issue of damages to the district court for further proceedings.